## STATE ex OLENTANGY OIL CO v LORAIN (city)

Ohio Common Pleas, Lorain Co

Decided Sept 14, 1937

Troy A. Feibel, Columbus, and Samuel Deutch, Elyria, for relator.

John D. Pincura, City Solicitor, Lorain, for defendant.

## OPINION

By FINDLEY, J.

The plaintiff asks for a writ of mandamus requiring the defendants to issue a permit for it to install twelve more gasoline storage tanks holding one thousand gallons each. The defendants refuse because a city ordinance limits such storage to six thousand gallons, which, heretofore, the plaintiff has installed.

On February 8, 1937, plaintiff leased lands with a frontage of 175 feet on Broadway and 132 feet on 13th Street in the city of Lorain, within the business district and well removed from all other buildings, and adjacent to a railroad switch.

On February 15, 1937, amended §6 of Ordinance No. 3022 was passed as an emergency measure and appears in Ordinance No. 4483 as follows:

"All underground storage tanks shall be constructed of iron or steel, bearing the stamp of the approval of the Underwriters' Laboratories thereon, and shall not exceed one thousand (1,000) gallons in capacity. No greater capacity than six one thousand (1,000) gallon tanks shall be placed, installed, constructed or maintained underground at any place or location where inflammable liquids are sold or stored within the city of Lorain, state of Ohio. No greater capacity than six one thousand (1,000) gallons of inflammable liquids shall be stored at any place or location where inflammable liquids are sold or stored with-

in the city of Lorain, Ohio. A distance of two hundred feet (200) shall be maintained between such batteries of storage tanks unless said tanks are separated by a public street of at least forty (40) feet in width. All underground storage tanks shall be coated on the outside with tar or other non-rusting material. Tanks containing less than five hundred and sixty (560) gallons, shall be buried at least eighteen (18) inches apart; tanks containing more than five hundred sixty (560) gallons and less than one thousand gallons (1000) shall be buried at least three (3) feet apart. Tanks shall be buried underground at the point of installation to a depth of at least three (3) feet when the storage is less than five hundred and sixty (560) gallons; tanks containing more than five hundred and sixty (560) gallons shall be buried at least three (3) feet and six (6) inches at the point of installation, and at least three feet apart."

The plaintiff claims that the amended ordinance is invalid and that it was wrongfully passed for the purpose of preventing the complete operation of its business.

The good faith of the municipal authorities will not be questioned in the absence of fraud or a gross abuse of discretion. Mettling v White, 5 Abs 809.

In State ex v Combs, 129 Oh St 251, 2 O.O. 152, Judge Jones, at page 255, says:

"The determination whether the ordinance regulations are reasonable and necessary for the safety of the public is committed to the discretion of the legislative body, and unless it is clear that such police regulations are unreasonable or arbitrary, or have no relations to the public health, morals and safety, the courts will not hold the same invalid, or substitute their judgment for the legislative discretion."

Judge Matthias, in City of Dayton v Kresge Co., 114 Oh St 624, states, at page 629:

"The courts enter upon such inquiry, therefore, with a presumption favoring the validity of the ordinance and with the burden devolving upon the one challenging its validity to show that it is clearly unreasonable and arbitrary."

In Wondrak v Kelley, 129 Oh St 268, 2 O.O. 159, the first syllabus reads as follows:

"If it is clear that police regulations

adopted by municipal councils are arbitrary or unreasonable and have no substantial relation to the public health, morals, safety or public welfare, it becomes the duty of the court to declare such regulations to be invalid."

A municipality may make reasonable regulations governing the storage of gasoline. In 1902 the Supreme Court of Illinois held it reasonable for a city to prohibit the storage of more than five barrels within one thousand feet of any building. 64 NE 1110. In 1905 the Supreme Court of Louisiana sustained an ordinance that forbade the storage of any gasoline within a city. 38 Southern 199. Perhaps no one would claim that these decisions are good law when applied to the changed situation now existing. Thus in 1925 the Supreme Court of Ohio in 113 Oh St at page 248 said:

"Having reached the conclusion that, properly installed and properly operated, the filling station is not such a fire or explosion hazard as to constitute a nuisance for that reason alone, we are unable to distinguish it from any other class of business not offensive in itself that attracts substantial patronage, since in this day and age so large a per cent of the patrons of every merchant utilize the automobile as a means of conveyance to and from the merchant's place of business."

In 1927 it was held in 28 Oh Ap 55 (5 Abs 649), that the maintenance of an elevated storage gasoline station with a capacity of fifteen thousand gallons, close to moving locomotives, and within eighty feet of a residence, was not a nuisance per se. This holding was affirmed by the Supreme Court in 119 Oh St 139.

Chapter 8 of the General Code of Ohio vested certain powers in the State Fire Marshal. These powers and duties were later transferred to the Department of Commerce by §154-39 GC. No powers were granted with reference to regulating the storage of gasoline, but inflammable liquids, when used in the business of dry cleaning, are referred to in §§843-40 et seq., GC. Our legislature placed no limit upon the quantity but directed that the storage be in steel tanks, vented and buried three feet below the ground, and "All tanks to be of such specifications as required by the National Board of Fire Underwriters' Laboratories." Thus the legislature has regarded with approval the precautions promulgated by the National Board of Fire Underwriters.

Counsel in this case agreed upon the introduction in evidence of plaintiff's exhibit D, that being a copy of "the regulations of the National Board of Fire Underwriters for the installation of containers for storing and handling inflammable liquids." At page 4 of Exhibit D the safe maximum capacity for the underground storage of gasoline is fixed at fifty thousand gallons, within a radius of forty feet, and an unlimited quantity is approved within a radius of fifty feet.

The evidence indicates that the National Board of Fire Underwriters approves the tanks that the plaintiff desires to install. Each tank is provided with a vent pipe extending several feet above the ground, which permits air to enter as the tank is emptied and which conducts the fumes from the tank as it is filled; but the vent pipe is so screened that flames cannot enter the tank nor cause an explosion. Experts testify that in no instance has an underground gasoline storage of this type exploded or burned. A modern view is reflected in a case reported in 133 Atlantic 30. The Supreme Court of Pennsylvania there said:

"Summarizing the findings of the trial judge, more fully appearing in the opinion of the Superior Court, and which were not excepted to it was concluded that the storage of gasoline in unlimited quantities in properly constructed and equipped tanks such as those erected in plaintiff borough is not dangerous to life or property, and it can be and is stored in large quantities in thickly populated districts without danger; that the storage of the amount of gasoline provided for in the tanks in question, 36,000 gallons, is not dangerous within itself, if properly regulated; and, when properly supervised, the use of such appliances for the storage of gasoline as have here been provided does not create a fire hazard to the traveling public or the inhabitants of plaintiff borough. Under these findings, it could not be determined otherwise than that the ordinance in question is unreasonable. It was conclusively shown that not the amount of gasoline stored, but the manner of its storage, determines the question of danger therefrom, and that as here stored in modern, scientifically constructed tanks it is not dangerous."

It should be noted that the Lorain ordinance establishes no zones, and that the

same restrictions apply to the main business district and to the vacant fields upon the outer margin of the municipality. The premises may consist of several acres, but not more than six thousand gallons of gasoline shall be stored at any place or location where inflammable liquids are sold or stored within the city of Lorain. If four stations are located at the inter section of two down town streets, a combined storage of twenty-four thousand gallons at that point· is permitted. Two opposite filling stations, separated by a 40-foot street, each may store six thousand gallons, but if the two filling stations are on the same side of the street, their storage of six thousand gallons each must be separated by a distance of two hundred feet. This requirement seems to serve a purpose other than the protection of the public safety. Apparently the ordinance has no substantial relation to the needs of public safety, and is an arbitrary rule rather than a reasonable regulation.

A car of gasoline holds eight thousand gallons. The ordinance restricts the plaintiff to six thousand gallons and prevents the unloading of a car except in installments. The plaintiff's practice, prior to the filing of this suit, had been to unload five thousand gallons at one time and leave three thousand gallons in the car for unloading forty-eight hours later. The evidence indicates that the plan, while serving the requirements of the ordinance, was more dangerous than the immediate underground storage of the car's contents.

Truck movements are neither mentioned nor regulated by any ordinance. To permit a truck loaded with ten thousand gallons  of gasoline to operate at will through the business district of the city of Lorain, and to prevent within the entire city the unloading of a rail shipment of eight thousand gallons is not reasonable. The amended ordinance unintentionally gave to the truckers a virtual monopoly upon the transportation of gasoline.

In determining whether or not the ordinance is a reasonable safety regulation, the court should consider the rights of all the citizens affected by it. The public has an interest in the savings that result where gasoline is unloaded direct from railroad tank cars to filling stations, and it has an interest in keeping the highways free from additional dangerous freight.

Defendants' exhibit 6 is a report on the city of Lorain made by the National Board of Fire Underwriters on November 25, 1932. At page 18 this report says: "The existing state laws and advisory regulations governing explosives and inflammables are generally good but do not cover many important items; municipal ordinances are inadequate."

At page 23 of this report its recommendation was:

"That a complete code of regulations governing the manufacture, sale, storage, and transportation of explosives and inflammables be adopted by ordinance, the chief of the fire department to be held solely responsible for its enforcement; * * *."

Ordinance No. 4483 was passed as an emergency measure, which perhaps restricted an opportunity for its fullest consideration and discussion by the members of the council. Presumably the entire subject will later be reviewed and reasonable regulations adopted.

This court takes judicial notice of the fact that Lorain is a large city, industrially important, and so located that its further growth is certain. It seems not reasonable to hold that a car of gasoline cannot lawfully be unloaded and stored there underground. Accordingly amended §6 of Ordinance No. 3022 is declared invalid in so far as it limits storage of six thousand gallons and requires a separation of two hundred feet, and the writ of mandamus and injunction prayed for are granted at the defendants' costs.